1

```
 1              UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF TEXAS
 2                   SHERMAN DIVISION


 3
     UNITED STATES OF AMERICA   |  DOCKET NO. 4:16CR37
 4                              |
                                |  MAY 30, 2017
 5   VS.                        |
                                |  10:42 A.M.
 6                              |
     JOHN PAUL CHILDERS         |  BEAUMONT, TEXAS
 7
     ----------------------------------------------------------
 8

 9           VOLUME 1 OF 1, PAGES 1 THROUGH 25

10       REPORTER'S TRANSCRIPT OF SENTENCING HEARING

11         BEFORE THE HONORABLE MARCIA A. CRONE
                UNITED STATES DISTRICT JUDGE
12
     ----------------------------------------------------------
13

14   APPEARANCES:

15   FOR THE GOVERNMENT:    MARISA MILLER
                            U.S. ATTORNEY'S OFFICE
16                          101 EAST PARK BOULEVARD
                            PLANO, TEXAS 75074
17

18   FOR THE DEFENDANT:     JEFFERY CHARLES KING
                            ATTORNEY AT LAW
19                          2610 1/2 STATE STREET
                            DALLAS, TEXAS 75204
20

21   COURT REPORTER:        TONYA B. JACKSON, RPR-CRR
                            FEDERAL OFFICIAL REPORTER
22                          300 WILLOW, SUITE 239
                            BEAUMONT, TEXAS  77701
23

24
        PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
25    TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.
```

2

1              [OPEN COURT, DEFENDANT PRESENT VIA

2  VIDEOCONFERENCE.]

3              THE COURT:  This is Case No. 4:16CR37,

4  Defendant 1, *United States of America versus Joel Paul*

10:42AM   5  *Childers*.

6              Are you ready to proceed?

7              MS. MILLER:  Marisa Miller for the government.

8  Yes, your Honor.

9              MR. KING:  Jeff King for Mr. Childers.  Yes,

10:42AM  10  your Honor.

11              THE COURT:  And has the defendant signed the

12  video waiver form?

13              MR. KING:  Yes, judge.

14              THE COURT:  Have counsel and the defendant

10:43AM  15  read and discussed the presentence report, including any

16  revisions?

17              MR. KING:  Yes, your Honor.

18              THE COURT:  And has counsel fully explained

19  the report to the defendant?

10:43AM  20              MR. KING:  Yes, your Honor.

21              THE COURT:  Mr. Childers, do you fully

22  understand the presentence report?

23              THE DEFENDANT:  Yes, ma'am.

24              THE COURT:  Does counsel or defendant wish to

10:43AM  25  make any comments, additions, or corrections to the

3

1  report?

2              MR. KING:  Your Honor, outside of the

3  objections that were filed, there were a couple of

4  corrections that I have spoken to probation about that we

10:43AM  5  believe have already been changed in the system.  The

6  first is Mr. Childers' date of birth reads incorrectly.

7  His correct date of birth is September 16th, 1966.

8              THE COURT:  Okay.  Has that been changed,

9  probation?

10:43AM  10              PROBATION OFFICER:  Yes, your Honor.

11              THE COURT:  All right.

12              MR. KING:  And then the other are a couple

13  medical conditions that need to be added to paragraph 89;

14  and that includes sleep apnea and Charcot-Marie-Tooth

10:44AM  15  disease, CMT.

16              THE COURT:  What is that?

17              MR. KING:  If you would give me just a moment,

18  your Honor.

19              (Discussion off the record between Mr. King

10:44AM  20  and the defendant.)

21              MR. KING:  Your Honor, it's a disease that

22  affects the peripheral nerves which lie outside the brain

23  and spinal cord and supply the muscles and sensory

24  organs, resulting in weakness of the foot and lower leg

10:44AM  25  muscles, hands, and arms.

4

1       THE COURT:  All right.  Has probation included

2  that in the report?

3       PROBATION OFFICER:  No, your Honor.  We

4  didn't...

10:45AM  5       THE COURT:  I think that was "no"?

6       MS. MILLER:  Yes, your Honor.  That was a

7  "no."

8       PROBATION OFFICER:  Yes, your Honor.  We did

9  not receive that information until the final presentence

10:45AM  10  report had already gone out.

11       THE COURT:  Okay.  Well, do you plan on, like,

12  revising it to include that or not?

13       PROBATION OFFICER:  We will include medical

14  information in a separate document to the BOP whenever we

10:45AM  15  submit his designation paperwork.

16       THE COURT:  Very well.  Okay.

17       Otherwise, Mr. Childers, does the report

18  adequately cover your background?

19       THE DEFENDANT:  Yes, ma'am.

10:45AM  20       THE COURT:  And has the government read the

21  report; and does it wish to make any comments, additions,

22  or corrections?

23       MS. MILLER:  We have read the report, your

24  Honor, and have no comments, addictions, or corrections

10:45AM  25  to it.

5

1          THE COURT:  All right.  Now, there were some

2    objections filed.  One of them has to do -- look at

3    No. 1, improper relevant conduct.  Okay.  Paragraphs 9

4    and 10.

10:46AM   5          All right.  So, what's the basis for your

6    objection?

7          MR. KING:  Your Honor, defense does not

8    believe this is relevant conduct given the charges to

9    which Mr. Childers pled.  Paragraphs 9 and 10 cover --

10:46AM  10    and it's not even an offense because he was never

11    arrested for it; but it's an event that happened over ten

12    years ago, in 2004.  Mr. Childers was approached by law

13    enforcement about this, but he was never taken into

14    custody.  So, defense believes it should not be included

10:47AM  15    in the PSR for those reasons.

16          THE COURT:  All right.  What's the

17    government's response on that?

18          MS. MILLER:  Your Honor, the government's

19    response is that the court can essentially consider

10:47AM  20    any -- can the court still hear me?

21          THE COURT:  Yes.  Can you hear me?

22          MS. MILLER:  Okay.  Yes.  Thank you, your

23    Honor.

24          THE COURT:  Okay.

10:47AM  25          MS. MILLER:  Essentially the court can

6

1  consider any information in determining the appropriate

2  sentence; and I particularly cite to Section 1B1.4 of the

3  sentencing guidelines that says the court can consider

4  without limitation any information concerning the

10:47AM  5  background, character, and conduct of the defendant

6  unless prohibited by law.

7           In this case we're talking about a long

8  pattern and history of exploitative behavior involving

9  children.  So, while the government agrees that there was

10:47AM  10  no criminal conviction and there is no sentencing

11  guideline enhancement because of this, the government

12  does urge that this is information that the court should

13  consider in determining the appropriate sentence for this

14  defendant.

10:48AM  15           THE COURT:  The objection is overruled.  I

16  think it's relevant background information.  It certainly

17  shows a predisposition to this kind of behavior that's

18  charged in this case to which he pled guilty.  So, that's

19  overruled.

10:48AM  20           Okay.  Then there's your next objection.

21           MR. KING:  And, your Honor, before you get to

22  it, the defense is withdrawing Objection No. 3.

23           THE COURT:  Okay.

24           MR. KING:  But Objection No. 2, judge, objects

10:48AM  25  to the enhancement for distribution in that it does not

7

1   fall under the distribution enhancement under

2   2G2.1(b)(3).  This is a case where Mr. Childers pled to

3   production and the paragraphs that actually contribute to

4   this enhancement corroborate the production in that he

10:49AM 5   provided financial consideration in exchange for the

6   production of these videos, but he had absolutely nothing

7   to do with the distribution of those.  The only conduct

8   that resulted from the financial payment was that he was

9   able to view these things.  It was not public knowledge.

10:49AM 10  It was not posted on any Internet site.  There's no

11  evidence that he distributed it to anyone else.

12          THE COURT:  All right.  Does the government

13  have a response?

14          MS. MILLER:  Yes, your Honor.  The

10:49AM 15  government's response is that that argument is

16  nonsensical.  It appears to be that the defendant paid to

17  have images and videos depicting the custom-made

18  exploitation of children produced for his benefit but

19  that he did not seek their distribution.  Well, it would

10:49AM 20  be nonsensical for him to pay for children to be abused

21  at his discretion but then not actually want to see those

22  images.

23          I turn the court's attention to the commentary

24  of this guideline section.  It's Commentary Note 3 on

10:50AM 25  page 221 of the guidelines manual that specifically notes

8

that the defendant knowingly engaged in distribution if

he committed the distribution himself, which we're not

alleging, but, B, he did aid, abet, counsel, command,

induce, procure, or willfully cause that distribution or

10:50AM  seek, conspire to distribute.  And certainly in this case

he did.  He commanded and induced that the images and

videos of these children's abuse be distributed to him.

        MR. KING:  Your Honor, my only response to

that is that it -- to argue it's nonsensical is a bridge

10:50AM  too far.  The government clearly agrees *[sic]* with our

objection, but the theory behind this is that there is

really no difference between what is being alleged with

the actual production and distribution.  I think they're

trying to wedge that same argument that he's already pled

10:51AM  to the production and participation of that into the

distribution argument.  This was not distributed to any

other person.  It was not posted on any website.  It was

not available for public viewing.

        THE COURT:  But it was distributed to him.

10:51AM  So, I don't see that that -- that should be sufficient.

So, your objection is overruled.

        MR. KING:  And under that argument --

understood, judge.

        THE COURT:  Okay.  To the extent the court

10:51AM  previously deferred acceptance of the plea agreement, it

9

1  is now accepted.

2         The court finds the information contained in

3  the presentence report has sufficient indicia of

4  reliability to support its probable accuracy.  The court

10:51AM 5  adopts the factual findings, undisputed facts, and

6  guideline applications in the presentence report.

7         Based upon a preponderance of the evidence

8  presented and the facts in the report, while viewing the

9  Sentencing Guidelines as advisory, the court concludes

10:51AM 10  that the total offense level is 43, the criminal history

11  category is II, which provides for an advisory guideline

12  range of life as to each count.  Well, it -- I think

13  that's right.

14         MS. MILLER:  Well, your Honor, if the

10:52AM 15  government can just interject.  Because --

16         THE COURT:  Statutory provision is 15 to 30

17  years as to each.  So, I don't --

18         MS. MILLER:  That's correct, your Honor.  So,

19  the guideline range essentially becomes 30 years on each

10:52AM 20  count.

21         THE COURT:  That's what I thought.  I didn't

22  understand -- that's what's here but -- right.  It should

23  be -- okay.  Because that's the statutory maximum.  So,

24  it would be 30 as to each count.  All right.  And that's

10:52AM 25  also the recommended sentence on each count

10

1  consecutively.

2        Okay.  Does defendant's counsel wish to make

3  any remarks on behalf of the defendant?

4        MR. KING:  Yes, your Honor.  Thank you.

10:52AM  5        The defense is requesting that a term of

6  imprisonment to Mr. Childers be awarded at 240 months per

7  count and that run concurrently.  Defense does not ask

8  for this lightly, judge.  As Mr. Childers will state in

9  his allocution, this type of conduct represents the

10:53AM 10  darkest parts of human nature.  I'm sure the government

11  is going to comment on that as well.  We don't dispute

12  that.  But the only thing that someone can do when

13  they're facing an offense like this is to work towards

14  forgiveness and towards healing, is to do exactly what

10:53AM 15  Mr. Childers did on January 26th, 2017.  In this very

16  courtroom, he raised his right hand and he swore under

17  oath to tell the truth; and he accepted responsibility

18  for this misconduct.  That's all that was available to

19  him.  And he did so knowing full well that possibly he

10:53AM 20  would be facing 30 years consecutively.  He did that.  He

21  pled guilty with the hope that he would breathe some free

22  air at some point in his life, that he could finish his

23  life outside of the jail.  It's for those reasons, your

24  Honor, that we ask that this sentence be run

10:54AM 25  concurrently.

11

1        He has done everything he can do.  He's

2   accepted responsibility.  There's more to this case than

3   just these atrocities.  Mr. Childers has a stepdaughter

4   named Sarah Wong; and in that letter she writes of

10:54AM  5   someone who was there for her when she would run away

6   from home; was there for her when she had problems

7   communicating with her mother and the person that her

8   mother was living with, her father; that she went to Joel

9   Childers to seek help that he provided for her; that he

10:54AM 10   would actually convince her to go back and try and make

11   amends with this family.  This is someone who still has

12   good in him, and we'd ask the court to recognize that and

13   to recognize that there's no deterrent in sentencing

14   someone to consecutive 30-year prison terms.  The only

10:55AM 15   deterrent from that, your Honor, we would submit, is to

16   deter defendants not to plead guilty to this type of

17   offense because that, as the court is well aware, is a

18   life sentence.  Mr. Childers is 50 years old.  Even if

19   the court grants what the defense is requesting, this is

10:55AM 20   likely a life sentence for Mr. Childers.

21        As paragraph 89 attests, his health is not

22   good.  The chances of Mr. Childers actually living to see

23   his family again are slim.  So, all we would ask is the

24   court recognize that Mr. Childers accepted responsibility

10:55AM 25   for something like this.

12

1        In addition, we would just add that -- as the

2    government noted awhile back, they declared this case

3    complex.  This was going to be a trial that required

4    international witnesses to be flown here to testify about

10:55AM  5    these things, and on January 26th Mr. Childers relieved

6    them of that burden.  And for those reasons and under the

7    factors of 3553(a) in the Sentencing Guidelines, the

8    defense would ask that Mr. Childers be sentenced to

9    concurrent terms of imprisonment.  Thank you, judge.

10:56AM 10        THE COURT:  All right.  Does the defendant

11    wish to make a statement?

12        THE DEFENDANT:  Yes, your Honor.  Thank you

13    for allowing me the opportunity to speak.  I would like

14    to state briefly how sorry I am for my actions that have

10:56AM 15    brought us all together.  I let evil happen; and when

16    evil happens, it is not so much that victory is scored

17    for evil as a failure for good.  I have failed.

18        At this point there's no excuse for my

19    actions, only apologies, healing, and hope.  My apology

10:56AM 20    should be an important part at the start of this process

21    for the victims.  Foremost, I want to express how sorry I

22    am to the young girls, my victims in this mess.  Children

23    have had their families torn apart and are too young to

24    understand.  For years they will struggle to comprehend

10:57AM 25    what their mother, their father, their aunt, and their

1 grandmother were involved in with me.  I fear they will

2 fight to find love and self-worth in a replacement family

3 because of what I did.  I hope they find peace and love.

4 They deserve better.

10:57AM  5         I was involved in a terrible set of actions.

6 I regret it.  At some point in the fall -- late summer,

7 early fall of 2015, I told all those that I was involved

8 with that I could no longer continue.  I had made up my

9 mind to stop.  I had come to realize that what we did was

10:58AM 10 wrong.  I was scared.  I did not know where it would end

11 up at.  It was serious.  This was before I knew we were

12 possibly already under investigation.

13         I also need to apologize to my family for the

14 burdens that I have strapped them with.  My mother whom I

10:58AM 15 should be sheltering and providing comfort and support

16 for in her later years, instead I have added to her

17 struggles and pains with my sentence.  These actions were

18 my failing, not hers.  I need to tell my sister that I'm

19 sorry.  I have taken away her big brother by my selfish

10:59AM 20 actions, and I leave her with my responsibilities.  I

21 know she already has a load to carry of her own, and I've

22 only added to it.

23         My daughters, Sarah and Kimberly, denied

24 access, guidance, love, and assistance from their dad by

10:59AM 25 my actions.  Abandoned but not unloved.  Sarah who wants

14

1  her dad to give her away as she renews her vows; Kimberly

2  who depends on me for many things, from rides to the

3  doctor's office to help getting necessary medical

4  equipment.  I am sorry I won't be there for you because I

11:00AM 5  failed you.

6          My friends, unable to understand what has

7  happened with me.  The core group, as we discussed,

8  starting a business together.  I am sorry I have failed

9  you.  As a senior engineer and technical team lead

11:00AM 10  dealing with all things related to Microsoft SQL Server

11  for a prominent travel company with 20 years of

12  experience, college degrees, and too many industry

13  certifications to count, I have failed my employer and my

14  colleagues with these actions.  I want them to know I am

11:00AM 15  sorry.

16          I am painfully aware of the sacrifices many

17  others have made for me, most of them undeserved.

18  They've made sacrifices or have been forced to make them

19  because of my actions.  I thank you; and I'm sorry I have

11:01AM 20  failed you, too.

21          I have done a terrible, horrible thing that is

22  not justifiable.  I am ashamed, saddened, and disgusted

23  by those actions; and I regret it every day.  Every

24  single day.  And I will for the rest of my life.  I have

11:01AM 25  failed you, but I am not the demon that people think I

am.   None of us are who we were on our darkest and worst

days.   I can make no amends.   I cannot help my mother.   I

cannot be a dad to my daughters.   I cannot be a big

brother, a friend, or a workmate spending the rest of my

11:02AM   life in prison.   I deserve some punishment, a reasonable

one that I would hope considers my potential for good and

not just my failings.

MR. KING:   That concludes his statement, your

Honor.

11:02AM   THE COURT:   All right.   Thank you.

Does the attorney for the government wish to

make any remarks?

MS. MILLER:   Yes, your Honor.   The government

concurs with probation's request that the court impose a

11:02AM   term of imprisonment of 30 years on each of the counts to

be served consecutively.   While there is certainly a need

for deterrence in this case, the government would like to

make clear that a sentence of 60 years is required not

only because of the conduct in this case but also

11:02AM   because, let there be no mistake about it, Joel Childers

is a significant danger to the community and specifically

to any children.

I find it concerning that in his statement to

the court he says quite passively "I let evil happen.   I

11:03AM   was involved in a terrible set of actions" and statements

16

1  along the lines that he should be considered in light of

2  his best day, not in light of his worst.

3          I note Count 2 of the indictment, to which he

4  pleaded guilty, the conduct alleged went on for a period

11:03AM  5  of years -- September, 2013, to February 15th, 2016.  I

6  note that that 2006 *[sic]* date is also important because

7  contrary to what Mr. Childers told the court about having

8  concerns about his conduct and deciding on his own that

9  he would stop, he did in fact not stop.  And I only raise

11:03AM  10  this because he himself has raised this.  In the

11  communications with the women, he makes it clear.  Once

12  the woman who was the mother of the child alleged in

13  Count 1 of the indictment was arrested by the Romanian

14  authorities, he and the other women were concerned that

11:04AM  15  they would be found next and therefore decided to try to

16  back off their communications to avoid law enforcement.

17          And that's another point worth noting in this

18  case.  While the victim in Count 1 was found through

19  another investigation and while the Romanian authorities

11:04AM  20  had found the Western Union receipts which detailed

21  thousands of dollars that Mr. Childers had paid these

22  mothers and fathers to abuse their children, at his own

23  customized request, they -- the identifies of those other

24  individuals had not been determined.  It was not until

11:04AM  25  FBI agents were able to piece together forensically from

17

1   Mr. Childers' computer, the FBI agents here in the

2   Eastern District were able to identify those other

3   children alleged in Counts 2 and 3 of the indictment.

4           It's also worth noting that Mr. Childers was

11:04AM   5   not cooperative with law enforcement, not on the date

6   that the search warrant was executed and not thereafter.

7   And were that the only conduct, that conduct alone would

8   compel a sentence of 60 years, 30 on each count.  But

9   that's not all.

11:05AM   10          As the pretrial services report indicates,

11   there were communications and chats with other

12   individuals where he discussed wanting to see children

13   tortured; where he discussed wanting to see people

14   pained, bleeding, hooks through nipples, kenneling

11:05AM   15   children, degrading, abusive acts, as well as the

16   exchange of significant quantities of child pornography.

17   And in the government's sentencing statement, the

18   government submitted a chart detailing the breakdown, a

19   number of devices containing a number of images and

11:05AM   20   videos well in excess of 600.

21          So, your Honor, it is the government's request

22   that the defendant be sentenced to a term of imprisonment

23   of 30 years on each count to be served consecutively.  I

24   also note, as was in my sentencing statement in this

11:05AM   25   case, the government is asking that the $5,000 Justice

1  For Victims of Trafficking Act assessment be imposed and

2  would ask that if the defendant does claim to lack the

3  financial wherewithal to pay that assessment, that prior

4  to making a finding of indigency, the court does inquire

5  about the significant cash and other valuable resources

6  that the government knew to once be in Mr. Childers'

7  possession.  Thank you, your Honor.

8           MR. KING:  Your Honor, if I could just respond

9  briefly.

10          THE COURT:  All right.

11          MR. KING:  The government gives a compelling

12  closing argument, but this -- Mr. Childers has already

13  accepted responsibility for these things.  He's already

14  admitted to the court under oath that he did these

15  things.  If this were -- if he were convicted after a

16  jury trial, then it would make sense to give him the

17  maximum under statutory law for these two counts; but

18  that's not the case here.  In this case Mr. Childers

19  accepted responsibility, knowing full well potentially

20  that he could be serving those consecutive terms.  It

21  would make sense to not reward him but recognize that at

22  a minimum he relieved the government of proving this case

23  beyond a reasonable doubt, of calling those witnesses

24  that the government refers to from Romania here to the

25  United States, that due to Mr. Childers' own recognizance

19

1   and own actions, those things did not have to happen.

2   There are people that accept responsibility and own up to

3   what they did; and there are people that don't, that run

4   from it.

11:07AM   5        These are horrible atrocities that are not

6   easily admitted to, and Mr. Childers did that.  He has

7   done everything he possibly can.  For those reasons, the

8   term of imprisonment the defense believes should be

9   concurrent.

11:07AM   10        THE COURT:  Counsel know of any reason why

11   sentence should not be imposed at this time?

12        MR. KING:  No, your Honor.

13        THE COURT:  Pursuant to the Sentencing Reform

14   Act of 1984 and having considered the factors noted in 18

11:08AM   15   U.S.C., Section 3553(a), and after having consulted the

16   advisory Sentencing Guidelines, it is the judgment of the

17   court that the defendant, Joel Paul Childers, is hereby

18   committed to the custody of the Bureau of Prisons to be

19   imprisoned for a total term of 500 months.  The term

11:08AM   20   consists of 360 months on Count 1 and 360 months on

21   Count 2 of the indictment, 220 of which is to be served

22   concurrently -- that's of Count 2 -- and 140 to be served

23   consecutively, which comes up with a total of 500.

24        Probation can check my math on that.

11:08AM   25        The court recommends to the Bureau of Prisons

20

1  that the defendant receive appropriate sex offender

2  treatment while imprisoned.

3          While incarcerated, it is recommended that the

4  defendant participate in the Inmate Financial

11:08AM  5  Responsibility Program at a rate determined by Bureau of

6  Prisons staff in accordance with the requirements of the

7  Inmate Financial Responsibility Program.

8          It is further ordered that the defendant is to

9  pay restitution totaling $25,000 to the victims and in

11:08AM  10  the amounts listed in the "Restitution" section of the

11  presentence report, which is due and payable immediately.

12          The court finds the defendant does not have

13  the ability to pay interest.  The court will waive the

14  interest requirement in this case.

11:09AM  15          The court finds this defendant does not have

16  the ability to pay a fine.  The court will waive the fine

17  in this case.

18          It is ordered the defendant shall pay the

19  United States a special assessment of $200 which is due

11:09AM  20  and payable immediately.

21          It is further ordered the defendant shall pay

22  an assessment of $5,000 on Count 1 and $5,000 on Count 2

23  pursuant to the Justice For Victims of Trafficking Act of

24  2015 and 18 U.S.C., Section 3014.

11:09AM  25          Upon release from imprisonment, the defendant

shall be on supervised release for a term of 10 years.

This term consists of 10 years on Count 1 and 10 years on

Count 2, all such terms to run concurrently.  Within 72

hours of release from the custody of the Bureau of

Prisons, the defendant shall report in person to the

probation office in the district to which the defendant

is released.

        The defendant shall not commit another

federal, state, or local crime and shall comply with the

standard conditions that have been adopted by this court.

In addition, the defendant must comply with the mandatory

and special conditions and instructions that have been

set forth in the defendant's presentence report.

        The court finds this to be a reasonable

sentence in view of the nature and circumstances of the

offenses entailing the defendant's production of child

pornography; his conspiring with the parents of 2

prepubescent minor females under the age of 12 to engage

in sexually explicit conduct with the minors, including

sex acts involving oral contact with and penetration of

the vagina and anus as well as masturbation for the

purpose of creating visual depictions of such conduct;

his sending payments to the parents of the children in

Romania requesting that they create shows in which they

sexually abuse the minors and transmit the live and

22

1  recorded videos via the Internet to his residence; his

2  possessing 71 videos containing child pornography,

3  including depictions of infants and toddlers on his

4  computer; his admission to agents that he downloaded and

11:10AM  5  viewed child pornography for approximately 10 years and

6  that he had chats with others on the Internet in which he

7  discussed performing sex acts on children; his prior

8  convictions for theft, driving with an invalid license,

9  and driving while intoxicated (2); and his apparent

11:11AM  10  alcohol abuse problem.  It will serve as just punishment,

11  promote respect for the law, and deter future violations

12  of the law.  Although the court finds the guideline

13  calculations announced at the sentencing hearing to be

14  correct, to the extent they were incorrectly calculated,

11:11AM  15  the court would have imposed the same sentence without

16  regard to the applicable guideline range in light of the

17  factors set forth in 18 U.S.C., Section 3553(a).

18           You have a right to appeal your conviction if

19  you believe that your guilty plea was somehow unlawful or

11:11AM  20  involuntary or if there was some other fundamental defect

21  in the proceedings that was not waived by your guilty

22  plea.  You have a statutory right to appeal your sentence

23  under certain circumstances, particularly if you think

24  the sentence is contrary to law.  A defendant, however,

11:11AM  25  may waive those rights as part of a plea agreement; and

1  you've entered into a plea agreement which waives certain

2  rights to appeal your conviction and sentence.

3          With the exception of the reservation of the

4  right to appeal on specified grounds set forth in the

11:11AM    5  plea agreement, you've waived any appeal, including

6  collateral appeal, of any error which may have occurred

7  surrounding the substance, procedure, or form of the

8  conviction and sentence in this case.  Such waivers are

9  generally enforceable; but if you believe the waiver is

11:12AM   10  unenforceable, you can present that theory to the

11  appellate court.

12          With few exceptions, any notice of appeal must

13  be filed within 14 days of judgment being entered in your

14  case.  If you are unable to pay the cost of an appeal,

11:12AM   15  you may apply for leave to appeal *in forma pauperis*.  If

16  you so request, the clerk of the court will prepare and

17  file a notice of appeal on your behalf.

18          The presentence report is made part of the

19  record and is placed under seal except counsel for the

11:12AM   20  government and defense may have access to it for purposes

21  of appeal.

22          Were there any other counts?

23          MS. MILLER:  Yes, your Honor.  The government

24  would move to dismiss Counts 3 through 5 of the

11:12AM   25  indictment.

24

1        THE COURT:  That's granted.

2        The defendant is remanded to the custody of

3   the United States Marshal and then to the custody of the

4   United States Federal Bureau of Prisons to begin the

11:12AM   5   service of sentence.

6        Is there a particular facility you wish to

7   request?

8        MR. KING:  Yes, your Honor.  FMC Springfield,

9   Missouri.

11:12AM   10        THE COURT:  Okay.  That's a medical facility.

11   Is his physical medical needs such that he requires that

12   type of care?

13        MR. KING:  Yes, your Honor, we believe so.

14        THE COURT:  Okay.  I can recommend that, but

11:13AM   15   it just -- it seems like he's got some problems, but I'm

16   not sure they rise to the level of the acute kinds of

17   problems that the medical centers generally would

18   address.

19        MR. KING:  I think it's the nature of his

11:13AM   20   problems, that they are consistent and he requires

21   medical care on a consistent basis.  His term of I guess

22   detention at Fannin County, he has not been able to

23   receive a lot of medical attention in the manner in which

24   he needs.  So, that's why we -- in fact, we know that he

11:13AM   25   was able to get better medical attention during the brief

25

1 stay he had at FMC Fort Worth.  The only difference is

2 Springfield is closer to where his mother lives, and she

3 can visit him easily there.

4          THE COURT:  Okay.  Well, I can recommend that.

11:13AM  5 That's no guarantee it will happen, but I'll do that.

6          Is there anything further?

7          MS. MILLER:  No thank you, your Honor.

8          MR. KING:  No, your Honor.

9          THE COURT:  All right.  Thank you, and you're

11:14AM 10 excused.

11          (Proceedings adjourned, 11:14 a.m.)

12

13

14 COURT REPORTER'S CERTIFICATION

15          I HEREBY CERTIFY THAT ON THIS DATE, JULY 26,

16 2017, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

17 RECORD OF PROCEEDINGS.

18

19

20                    /s/_____
                     TONYA JACKSON, RPR-CRR
21

22

23

24

25